1
2
3
4
5
6
7
8
9          UNITED STATES DISTRICT COURT
10        SOUTHERN DISTRICT OF CALIFORNIA
11

12   **LACY C. BLACK,**                    CASE NO. 10cv1707-DMS (MDD)

13                      **Petitioner,**    **REPORT AND**
                                           **RECOMMENDATION OF**
14        **vs.**                          **UNITED STATES**
                                           **MAGISTRATE JUDGE RE:**
15                                         **PETITION FOR WRIT OF**
                                           **HABEAS CORPUS**
16   **KELLY HARRINGTON, Warden**
                                           [ECF No. 1]
17                      **Respondent.**

18
19        This Report and Recommendation is submitted to United States District Judge
20   Dana M. Sabraw pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73 of the United
21   States District Court for the Southern District of California.  After reviewing the
22   Petition (ECF No. 1), Respondent's Answer and Memorandum of Points and
23   Authorities in support thereof ("Answer") (ECF No. 7),  and the supporting
24   documents and pertinent state court Lodgments, the Court **RECOMMENDS** the
25   Petition be **DENIED** for the reasons stated below.
26        Lacy Black ("Petitioner"), a state prisoner proceeding *pro se*, seeks federal
27   habeas relief through a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. §
28
                                    - 1 -              10cv-1707-DMS-(MDD)

2254 ("Petition") challenging his conviction in San Diego Superior Court (Case No. SCN176932).  (ECF No. 1).

Petition alleges nine claims: (1) the jury received improper instructions on the meaning of the term "kill zone;" (2) the trial court wrongfully excluded exculpatory *Brady* material; (3) that the arrest warrant was invalid; (4)that the lineup was unconstitutionally suggestive; (5) that the trial court wrongfully excluded exculpatory impeachment evidence; (6) that he was denied reciprocal discovery rights; (7) that he received ineffective assistance of trial and appellate counsel; (8) that insufficient evidence supported his conviction; and (9) that the imposition of consecutive sentences violated his right to a jury trial.  *Id.*

This Court has reviewed the merits of the Petition, and the Respondent's Answer to the Petition ("Answer"), supporting documents submitted by the parties, and the record in light of controlling legal authority.  For the reasons discussed below, it is **RECOMMENDED** the Petition be **DENIED**.

## I.    BACKGROUND

### A.    Procedural History

On July 20, 2006, a jury convicted Petitioner of the attempted murders of William Liebert (count one) and Rachel Liebert (count two) under California Penal Code section 664/187(a), and assault with a firearm on William (count three) and Rachel (count four) under California Penal code section 245(b).  (Lodg. 1, p. 130, 132-134).  On all counts, the jury found Petitioner committed the crimes for the benefit of a criminal street gang, pursuant to California Penal Code section 186.22(b)(1).  *Id.* at 130, 132-134.  On counts one through three, the jury also found that Petitioner discharged a firearm within the meaning of California Penal Code sections 12022.53(c) (count two) and (d) (counts one and three).  *Id.* at 130-134.  On counts three and four, the jury found that Petitioner personally used a firearm within the meaning of California Penal Code section 12022.5(a), and that Petitioner inflicted

great bodily injury on William under California Penal Code section 12022.7(a).  *Id.*

On January 12, 2007, the trial court sentenced Petitioner to a total term of 44 years, eight months, plus 25 years to life, to be served consecutively.  *Id.*  Petitioner filed a notice of appeal that day.  *Id.* at 244.

On August 31, 2007, Petitioner filed a direct appeal.  (Lodg. 2, p. 12-23). Petitioner asserted error in the trial court's response to the jury's question regarding the meaning of the term "kill zone" in three ways: (1) it did not instruct on the law and was unnecessary; (2) the response was pinpointed favoring the prosecution; and (3) the court's response denied Petitioner effective assistance of counsel and due process.  *Id.*  Petitioner also claimed the trial court violated his Sixth and Fourteenth Amendment rights by imposing consecutive sentence terms based on aggravating facts not found by the jury.  *Id.* at 25-28.  On May 8, 2008, the Court of Appeal, Fourth District, Division One, affirmed the trial court judgment, finding the trial court had not erred either in the court's response to the jury instruction, or in sentencing Petitioner  to consecutive terms.  (Lodg. 5, p. 2-3).  The California Supreme Court summarily denied a petition for review on August 13, 2008.  (Lodg. 7, p. 1).

Petitioner sought habeas relief by petitioning the California Superior Court for a Writ of Habeas Corpus, which was denied on May 20, 2009.  (Lodg. 8, p. 1, 4).  On July 2, 2009, Petitioner filed a Petition for Writ of Habeas Corpus with the California Court of Appeal. (Lodg. 9, p. 1).  The court initially denied the petition because Petitioner failed to include the Superior Court's order denying the writ.  (Lodg. 10, p. 1).  Upon Petitioner's refiling, the Court of Appeal denied the petition on October 20, 2009.  (Lodg. 12, p. 1).  On November 16, 2009, Petitioner filed a petition for review with the California Supreme Court, which denied the petition on June 9, 2010 without comment.  (Lodg. 14, p. 1).  On August 12, 2010, Petitioner filed the instant petition, proceeding *pro se.*  (ECF No. 1).

This Court has reviewed the merits of the Petition, the Respondent's Answer, supporting documents submitted by the parties, and the record in light of controlling legal authority.  For the reasons discussed below, it is recommended the Petition be **DENIED**.

## II.    STATEMENT OF THE FACTS

Federal habeas courts shall presume that "a determination of a factual issue made by a state court" is correct.  28 U.S.C § 2254(e)(1).  The burden of rebutting this presumption with clear and convincing evidence rests with the Petitioner.  *Id.*  In the absence of a reasoned decision from the state's highest court, the federal court will "look through" to the reasoned lower court decision. *Ylst v. Nunnemaker,* 501 U.S. 797, 801-06 (1991); *Van Lynn v. Farmon,* 347 F.3d 735, 738 (9th Cir. 2003).  The California Court of Appeal, in its unpublished, reasoned opinion, set forth the following facts of the case:

> At approximately 1:00 p.m. on March 16, 2004, 23-year-old William Liebert and his 25 year-old sister, Rachel Liebert, were sitting on the front porch of the house they shared with their father on Gold Drive, in the city of Oceanside.  The two were sitting about three feet apart at a small table.
> William and Rachel noticed an African-American man walking down the sidewalk toward them.  William noticed the man because he thought it was unusual for an African-American man to be walking in the predominately Samoan neighborhood.  Rachel thought it was "kind of weird" that the man was wearing a dark blue jacket because "it was really warm outside."
> The man stopped on the sidewalk in front of their house, looked in their direction and said, "What's up, homie?"  Almost immediately the man drew a gun and started firing.  William jumped up and ran in front of his sister, toward the front door.  A shot hit him in the side, and he fell before he reached the door.  William heard more shots being fired and could feel that he was being hit.  Rachel tried to push herself up against the wall behind her as the shots were being fired, "to try to get out of the way."  William fell approximately three feet away from Rachel.  The man walked closer to them and continued shooting.  Rachel kept screaming, "Please, stop.  Stop."
> When the man was within six to seven feet of William, he suddenly stopped shooting.  After he stopped shooting, the man looked up at Rachel, smiled, and then turned back in the direction from which he had approached.  Rachel saw a blue rag hanging out from the man's back pocket as he ran away.  Rachel was not hit by any of the shots.  Shell casings found at the scene indicated that the shooter had been moving as he fired.  Bullet marks were found on the porch railing, the

floor, and the stucco wall of the house.

Rachel grabbed William and tried to get him inside the house. Once they were inside, she closed the door, got William to lie down on the ground, and called 911. Paramedics took William to the hospital where he was treated for multiple gunshot wounds. William suffered "grazing-type" wounds on his elbow, hand, and foot. He also suffered a large wound in his abdomen, with multiple holes in his small intestine. A large hole in William's abdominal muscular wall required surgery. William's surgeon considered William's injuries to be "life-threatening." William remained in the hospital for eight days. The surgeon estimated that it took William six weeks to recover from his injuries and the surgery.

Rachel and William both identified Black as the shooter in separate photo lineups a couple of days after the incident. An Oceanside police officer included a photo of Black in the lineup because Black had been present at a nearby convenience store during what may have been a gang-related shooting. The shooting at the convenience store occurred two days before the Gold Drive shooting. The victim of the shooting was a member of the Neighborhood Crips.

Black was a member of the Deep Valley Crips. William had been a member of a rival gang, the Deep Valley Bloods, but had not been active in the gang for three to four years prior to the time he was shot. The officer who put together the photo lineup was aware of an ongoing feud between the Deep Valley Crips and the Deep Valley Bloods, and he thought there might be a connection between the convenience store shooting and the Gold Drive shooting.

After Rachel and William picked out Black as the shooter from the photo lineups, the officer issued a bulletin to law enforcement agencies in which the officer identified Black as being wanted in connection with the Gold Drive shooting. The officer later entered a warrant for Black's arrest "into the system." Efforts by the police department's gang unit to locate Black using his last known address were unsuccessful.

In February 2005, a police detective in Albuquerque, New Mexico, arrested Black on the outstanding California warrant. Black had been living with a relative who police identified as a "Crip[s] gang member."

A gang expert was of the opinion that Black committed the crimes for the benefit of his gang, the Deep Valley Crips. The expert opined that the Gold Drive shooting occurred in retaliation for an earlier shooting of a crip, and as part of an ongoing feud between the Deep Valley Bloods and the Deep Valley Crips.

(Lodg. 5, p. 3-6).

## III.   STANDARD OF REVIEW

Federal habeas corpus review safeguards against imprisonment of those held in violation of the Constitution, laws or treaties of the United States. 28 U.S.C. § 2254; *Harrington v. Richter*, 131 S.Ct. 770, 780 (2011); *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). In evaluating a habeas corpus claim, Federal courts apply a "highly

deferential standard," giving the "benefit of the doubt" to a state court decision. *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (*quoting Lindh v. Murphy*, 521 U.S. 320, 333 (1997)). Deference however, does not preclude relief and a Federal court can disagree with a state court within the parameters set out by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). *Miller-El v. Cockrell,* 537 U.S. 322, 340 (2003). The AEDPA sets out the scope of federal review, in 28 U.S.C. § 2254 in stating:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgement of a State court shall not be granted to any claim that was adjudicated on the merits in State court proceedings unless adjudication of the claim–
> (1) Resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) Resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)(2); *Harrington*, 131 S.Ct. at 780.

The phrase "clearly established Federal Law," within § 2254(d)(1) includes the governing legal principles as set out by the United States Supreme Court holdings in effect at the time of the relevant state court ruling, but not dicta. *Lockyer v. Andrade,* 538 U.S. 63, 71-72 (2003); *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

A state court decision is "contrary to" clearly established federal law when the state court's conclusion on a question of law is cannot be reconciled with a previous ruling on that question by the Supreme Court, or when the state court's conclusion differs from a prior Supreme Court case presenting "materially indistinguishable facts." *Williams*, 529 U.S. at 413. A state court's failure to cite or otherwise acknowledge Supreme Court precedent is insufficient, on its own, to support a finding of contrariness. *Early v. Packer*, 537 U.S. 3, 8 (2002).

A state court decision may involve an "unreasonable application" of clearly established federal law if the state court identifies the correct governing legal principles from Supreme Court precedent but applies those principles unreasonably

to the facts of the case. *Williams*, 529 U.S. at 413. The application must be objectively unreasonable rather than merely an erroneous or incorrect application of established federal law. *Wiggins v. Smith,* 539 U.S. 510, 520-521 (2003), *Lockyer,* 538 U.S. at 75-76 (2003).

In conducting a habeas review, the federal court looks to the last reasoned state court decision. *Van Lynn v. Farmon,* 347 F.3d 735, 738 (9th Cir. 2003). In the absence of a reasoned decision from the state's highest court, the federal court will "look through" to the reasoned lower court decision to discover the reasoning behind final judgement. *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000) (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803-4 (1991)).

## IV.    DISCUSSION

### A.    Ground One:  Improper Jury Instructions

Petitioner contends that the trial court issued an improper jury instruction when the court instructed the jury as to the meaning of "kill zone." (ECF No. 1, Ground 1, p.1). Respondent argues that Petitioner's first claim should be dismissed because: (1) this is not a federal question for which relief may be granted; and (2) the California courts' rejection of the claim is entitled to deference as it is not contrary to, nor an unreasonable application of United States Supreme Court precedent on the facts presented. (ECF No. 7, p. 17).

The trial court, at the close of evidence, instructed the jury with CALJIC 600, which as read to the jury, stated:

> A person may intend to kill a specific victim or victims and at the same time intend to kill anyone in a particular zone of harm or kill zone. In order to convict the defendant of the attempted murder of Rachel Liebert, the People must prove that the defendant not only intended to kill William Liebert but also intended to kill Rachel Liebert or intended to kill anyone within the kill zone. If you have a reasonable doubt whether the defendant intended to kill Rachel Liebert or intended to kill William Liebert by harming everyone within the kill zone, then you must find the defendant not guilty of the attempted murder of Rachel Liebert.

(Lodg. 5, p. 7; Lodg. 1, p. 111).

During deliberations the jury sent a note stating "Please provide: [¶] (1) Please clarify what a "kill zone" is. [¶] (2) What establishes a kill zone? [¶] (3) What is the area of a kill zone?"   (Lodg. 1, p. 128).

Over defense counsel's objection, the trial court issued supplemental instructions stating:

> Whether a 'kill zone has been established [*sic*] the jury may examine the following factors, including but not limited to: [¶] 1.  The proximity of the intended targets whether stationary or in defense of others. [¶] 2.  The type of weapon used. [¶] 3.  The number of shots fired. [¶] 4.  The caliber of the weapon. [¶] 5.  The distance of the shooter from the intended targets.

(Lodg. 5, p. 8-9; Lodg. 1, p. 129).

## 1.    Jury Instructions Interpreting "Kill Zone"

Petitioner contends that the supplemental jury instructions did not instruct on the law and were unnecessary.  The Court of Appeal reviewed Petitioner's claim on direct appeal.  (Lodg. 5, p 9-14).  In concluding that there was no error, the court stated:

> The court provided a sufficient response that directly addressed the jury's questions and that was a correct statement of the law under *Bland.*  The court indicated to the jury that it was the jury's duty to determine whether or not there was a "kill zone."  By providing the jury with a non-exclusive list of the types of factors it could consider in making this determination, the court also indicated that the jury was to examine, consider and weigh a variety of factors that speak to the nature and scope of the attack in question, thereby providing the jury with the assistance it requested.
> . . .
> The court did not instruct the jury to make any particular decision based in its findings regarding items of evidence, nor did the court comment on the state of the evidence.  Although the court gave the jury examples of the types of factors it could consider in determining whether Black had the concurrent intent to kill Rachel on a "kill zone" theory, the court did not give a "fact-based instruction," as Black asserts.
> . . .
> Here the jury *specifically requested* additional instruction regarding the meaning of a term used in an instruction it had been given.  The court did not abuse its discretion in determining that further instruction was warranted under the circumstances.

*Id.* at 13-14.

The standard for federal habeas review of a challenged jury instruction is

whether there is a reasonable likelihood that a jury has applied the instruction in a way that violates the Constitution. *Estelle,* 502 U.S. at 72. In order to merit relief, a petitioner must establish that the erroneous instruction "so infected the entire trial that the resulting conviction violates due process." *Id.* at 72; *Cupp v. Naughten*, 414 U.S. 141, 147 (1973). The court must look at the challenged instruction within the context of the trial record and instructions as a whole. *Estelle,* 502 U.S. at 72; *Henderson v. Kibbe*, 431 U.S. 145, 156 (1977); *Cupp*, 414 U.S. at 147. Habeas review is not available to re-visit state court determinations on issues of interpretation or application of state law. *Estelle,* 502 U.S. at 72. Even if an instruction varies from case precedent, no federal question arises in the absence of a Constitutional violation. *Mitchell v. Goldsmith,* 878 F.2d 319, 324 (9th Cir. 1989).

Petitioner has failed to show that the jury applied the challenged instructions in a way that violates the Constitution. *Estelle,* 502 U.S. at 72. The trial court utilized five factors drawn from a previous California Supreme Court case, *People v. Bland,* 28 Cal. 4th 313 (2002), to interpret the term "kill zone," as found in CALJIC 600. Whether the trial court committed error in interpreting the term "kill zone" or applying state case precedent is a matter for the state court, and is beyond the scope of federal habeas review. *Estelle,* 502 U.S. at 72. Because it is not the province of this court to re-examine the state court interpretation of "kill zone," absent a violation of due process (*see infra* part III(A)(2)), this claim does not present a federal question. *Id.*

### 2.   Supplemental Jury Instructions

Petitioner further claims that the supplemental jury instructions were argumentative pinpoint instructions that favored the prosecution by directing the jury's attention to certain factors and omitting the element of intent. (ECF No. 1, p. 7-9). The Court of Appeal rejected Petitioner's claim, stating:

> [T]he trial court's supplemental instruction concerning the term
> "kill zone" was not argumentative pinpoint instruction that favored the

prosecution.  The court informed the jury of the types of things it could consider, but not *how* to consider them or *how* to apply the evidence to reach a result.  The instruction did not suggest in any manner that the prosecution's interpretation of the evidence was correct.  The jury was free to decide whether the nature and scope of the attack was such that it could find beyond a reasonable doubt that Black intended to ensure William's death by killing everyone in the vicinity of William.

(Lodg. 5, p. 17-18).

Contrary to Black's claim, the court did instruct the jury on the need to find the existence of concurrent intent, as discussed in *Bland*, when it instructed the jury with CALCRIM No. 600.  The court told the jury that in order to convict Petitioner of the attempted murder of Rachel, the People had to prove "that the defendant not only intended to kill William Liebert *but also intended to kill Rachel Liebert, or intended to kill anyone within the kill zone*."  (Italics added).  The fact that the jury asked about the meaning of "kill zone" indicated that the jury had clearly been focusing on the question whether such concurrent intent existed, and knew that the court's response required reference to CALJIC No. 600.

*Id.* at 12-13.

In order to merit relief, the Petitioner must establish that the erroneous instruction "so infected the entire trial that the resulting conviction violates due process."  *Estelle*, 502 U.S. at 72; *Cupp*, 414 U.S. at 147.  A jury instruction may violate due process when it relieves the prosecution of its burden of proving every element of the charged offense and persuading the fact finder that this burden is met beyond a reasonable doubt.  *See e.g., Patterson v. New York,* 432 U.S. 197, 210 (1977); *Sullivan v. Louisiana,* 508 U.S. 275, 277-78 (1993).  The court, in its evaluation, must look at the challenged instruction within the context of the trial record and instructions as a whole.  *Estelle,* 502 U.S. at 72.

Here, Petitioner fails to show that the supplemental instructions improperly favored the prosecution in a way that relieved the prosecution of its burden.  As the Court of Appeal found, the supplemental instruction, as read to the jury, did not indicate how to consider, or to apply, the five factors.  (Lodg. 5, p. 17).  The instruction did not limit the jury's consideration to a closed universe in which a "kill zone" is or is not established by the presence or lack of those factors.  Rather, the

instruction informed the jury that they were *not limited* to the five factors.  Further, the factors lent themselves to a reasonable consideration either for or against the establishment of a "kill zone," depending on the jury's interpretation of the facts. Thus, because the supplemental instructions were not argumentatively pinpointed, they did not relieve the prosecutorial burden to prove every element of the charged offense beyond a reasonable doubt.  *Patterson,* 432 U.S. at 210.

Petitioner's contention that the supplemental instructions failed to include the intent element is also in error.  The supplemental instructions cannot be considered in isolation from the jury instructions in their entirety.  *See Estelle,* 502 U.S. at 72. CALCRIM 600, as read to the jury, clearly instructs on the element of intent. Further, nothing in the supplemental instructions serves to negate the intent element or imply that the element has been satisfied.  Thus, the supplemental instruction did not relieve the prosecution of the burden of proving every element of the charged crime.  *Patterson,* 432 U.S. at 210.

Petitioner has failed to show that the jury applied the supplemental jury instructions in a way that violated the Constitution.  *Estelle,* 502 U.S. at 72.  The state court's decision rejecting this claim is not contrary to, nor an unreasonable application of clearly established federal law.  *Williams*, 529 U.S. at 413. Accordingly, it is recommended that the Petitioner be **<u>DENIED</u>** on this ground.

### B.    <u>Ground Two:  Denial of Discovery of *Brady* Material</u>

Petitioner asserts two claims that the prosecution withheld exculpatory material in violation of his due process and fair trial rights under the Fifth and Fourteenth Amendments as set forth in *Brady v. Maryland*, 373 U.S. 83, 87 (1963). (ECF No. 1 at 4).  First, Petitioner asserts the prosecution failed to produce the photo lineup and admonishment signed by Rachel Liebert on March 16, 2004.  (ECF No. 1, Ground 2, p. 2).  Petitioner also contends, in the same claim, that the prosecution failed to disclose that the arrest warrant affidavit falsely stated that Rachel

identified Petitioner on March 16, 2004, when Rachel actually identified Petitioner from a photo lineup on March 18, 2004. *Id.* Second, Petitioner contends the prosecution did not timely produce "updated parole photos" showing changes in Petitioner's appearance which, according to Petitioner, affected the accuracy of witness's descriptions. *Id.*

Respondent counters that there was no *Brady* error. (ECF No. 7, p. 17). Respondent states that the information underlying Petitioner's first claim consists of matters of public record available at all times to Petitioner or his counsel. Accordingly, the prosecution had no duty independently to provide this information to Petitioner. *Id.* at 17-19. Regarding the second claim, Respondent contends there was no *Brady* error in the production of Petitioner's parole photos because trial counsel stipulated to the introduction of the photos during the trial. *Id.* at 21. And, the decisions of the California courts rejecting these claims are entitled to deference as they are not contrary to, nor an unreasonable application of United States Supreme Court precedent on the facts presented. *Id. at* 17.

The Court of Appeal denied Petitioner's claim finding no support for Petitioner's claim "that the outcome of his trial or appeal would have been different" had counsel raised the issue of the prosecution's failure to disclose exculpatory evidence or the flawed arrest warrant affidavit. (Lodg. 12, p. 1-2). The Superior Court similarly had found it "inconsequential" that the "affidavit supporting Petitioner's arrest warrant states an incorrect date of March 16, 2004, instead of March 18, 2004." *Id.* at 3. Regarding the updated parole photos, the Superior Court also found that Petitioner presented "no real evidence" that the parole photos supported any claim that witness descriptions were inaccurate, and that any "discrepancies in his description are minor." *Id.*

The prosecution's suppression of evidence favorable to an accused is a violation of due process when the suppressed evidence is material to either the guilt or

punishment of the accused, irrespective of good or bad faith of the prosecutor. *Brady v. Maryland*, 373 U.S. 83, 87 (1963). A "*Brady* violation" is made up of three components that a petitioner must prove. *See U.S. v. Jernigan*, 492 F.3d 1050, 1053 (9th Cir. 2007). First, the evidence at issue must be favorable to the accused. *United States v. Bagley*, 473 U.S. 667, 676 (1985). Favorable evidence may be exculpatory or may be evidence that can be used to impeach the testimony of prosecution witnesses . *Bagley*, 473 U.S. at 676. Second, the state must have suppressed this evidence either willfully or inadvertently. *United States v. Agurs,* 427 U.S. 97, 110 (1976). Lastly, the evidence at issue must be material to the petitioner's guilt or innocence. *Bagley*, 473 U.S. at 676-78. Ultimately, the test of whether the prosecution's suppression of evidence favorable to the accused rises to the level of a constitutional violation is, "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Kyles v. Whitley*, 514 U.S. 419, 433-34 (1995) (quoting *Bagley*, 473 U.S. at 682).

Petitioner contends that the prosecution failed to provide the photo lineup and admonishment signed by Rachel Liebert on March 16, 2004, and didn't inform the defense that the identification actually took place two days later. (ECF No. 1, Ground 2, p. 3-4). Petitioner asserts that this failure hindered Petitioner's right to cross examine and impeach identification witnesses. *Id*. 3-4. Petitioner concludes that such evidence could have been exonerating. *Id*. at 4. However, even assuming that this evidence is favorable to the defense and was suppressed by the prosecution, Petitioner's *Brady* claim still fails.

Petitioner's claim ignores significant evidence presented at trial identifying Petitioner as the shooter. (ECF No. 1, Ground 2, p. 1-4). Rachel Liebert testified that she identified Petitioner from a photo lineup on March 18, 2004, and also identified Petitioner as the shooter during her testimony in court. (Lodg. 15, RT Vol. 3, p. 105-106). William Liebert testified that he identified Petitioner in a photo lineup, and

1   again identified Petitioner as the shooter during his in-court testimony.  *Id.* at 66-68.

2       Petitioner implies that the photo lineups and admonishment from March 16,

3   2004, would impeach these identifications because Rachel was unable to identify

4   Petitioner on that date.  (ECF No. 1, Ground 2, p. 1).  Petitioner does not assert that

5   Rachel identified someone else from the photo lineup on March 16, 2004.  Officer

6   Dwight Carwell testified that Petitioner's photo did not appear in the March 16, 2004

7   photo lineups.  (Lodg. 15, Vol. 3, p. 139).  It was not until March 18, 2004 that

8   Petitioner's photo was placed into a photo lineup and, at that time, Rachel identified

9   Petitioner as the shooter.  *Id.* at 141.  Under the circumstances, it appears that

10  Rachel's failure to identify Petitioner in the photo lineup on March 16, 2004, is that

11  Petitioner's photo was *not* included in the lineup.  Consequently, the impeachment

12  value of the March 16 lineup, if any, is minimal.  Therefore, the evidence that

13  Petitioner claims as exculpatory does not raise a reasonable probability that the

14  outcome of the proceeding would have been different.  *Kyles*, 514 U.S. at 433-34.

15      Petitioner further contends that the prosecution's production of an updated

16  parole photograph five days into trial was untimely and did not allow the defense

17  opportunity to impeach identification witnesses.  *Id.* at 2-4.  Petitioner claims that the

18  photograph, taken on March 8, 2004, eight days prior to the shooting, depicted

19  Petitioner with shoulder length hair and facial hair.  *Id.* at 2-3.  Thus, the photo

20  evidence would be impeaching by contradicting witness descriptions of the shooter

21  having short hair and no facial hair.  *Id.*

22      Petitioner's claim is not supported by the record.  Rachel Liebert testified that it

23  was specifically Petitioner's *face* that she remembered when she identified Petitioner

24  in the photo lineup and in court.  (Lodg. 15, Vol. 3, p. 105-106).  Additionally, Rachel

25  testified that the shooter wore a baseball cap concealing the length of his hair.  *Id.* at

26  132.  William Liebert also testified that it was, "the grin on [Petitioner's] face," that

27  William recognized when identifying Petitioner in the photo lineup and in court.  *Id.*

28

1  at 66-68.  William also testified that he could not see the shooter's hair.  *Id.* at 78.

2  Therefore,  hair length or the presence of facial hair played did not play a significant

3  role in the witnesses' identification of Petitioner as the shooter.  In light of the

4  strength of the eyewitness victim testimony, a photo taken over a week prior to the

5  shooting does not raise a reasonable probability that the outcome of the proceedings

6  would have been different.  *Kyles*, 514 U.S. at 433-34.

7  Petitioner has failed to show that the prosecution suppressed evidence

8  favorable to Petitioner which was material to either Petitioner's guilt or punishment

9  in violation of due process.  *Brady*, 373 U.S. at 87.  The state court's decision rejecting

10 this claim is not contrary to, nor an unreasonable application of clearly established

11 federal law.  *Williams*, 529 U.S. at 413.  Therefore, it is recommended that relief on

12 the basis of Ground Two be **DENIED**.

13     **C.     Ground Three:  Invalid Arrest Warrant**

14  Petitioner claims that the warrant for the arrest of Petitioner was invalid and

15 thus violated Petitioner's right to due process.  (ECF No. 1, Ground 3, p. 1,4).

16 Petitioner asserts the warrant was not based on probable cause because Officer

17 Carwell incorrectly stated that Rachel Liebert identified Petitioner on March 16, 2004,

18 instead of March 18, 2004.  *Id.* at 1.

19  Respondent contends that the claim is foreclosed by *Stone v. Powell*, 428 U.S.

20 465 (1976).  (ECF No. 7, p. 21).  Respondent argues that under *Stone*, federal habeas

21 relief is not available if the state conducted a full and fair opportunity to be heard on a

22 search and seizure claim.  *Id.*  Furthermore, a mere claim of illegal arrest is

23 insufficient grounds for habeas relief.  *Id.*

24  The Superior Court denied Petitioner's invalid arrest warrant claim, finding

25 that the error in reporting the identification date as March 16, 2004, as opposed to

26 March 18, 2004, in the affidavit supporting Petitioner's arrest warrant was

27 "inconsequential."  (Lodg. 8, p. 3).  The Court of Appeal also acknowledged and denied

28

Petitioner's claim of an invalid arrest warrant.  (Lodg. 12, p. 1-2).

Federal habeas review is not available for Fourth Amendment search and seizure claims unless there was no full and fair opportunity to raise the claims in the state courts.  *Stone,* 428 US at 494.  Under California Penal Code section 1538.5, a defendant has the opportunity to move to suppress evidence based on a violation of the Fourth Amendment.  *Gordon v. Duran*, 895 F.2d 610, 613-14 (9th Cir. 1990).  Whether or not Petitioner utilized the opportunity is not relevant to the inquiry, nor is the actual correctness of the state court decision.  *Ortiz-Sandoval v. Gomez*, 81 F.3d 891, 899 (9th Cir. 1996); *Gordon*, 895 F.2d at 613-14.  A claim of illegal arrest is not viewed as a bar to subsequent prosecution, nor is it a defense to a valid conviction.  *United States v. Crews,* 445 U.S. 463, 474 (1980) (citing *Gerstein v. Pugh,* 420 U.S. 103, 119 (1975)).

Petitioner has not been denied a full and fair opportunity to raise his Fourth Amendment claim of an invalid arrest warrant in the state court.  Petitioner was afforded the opportunity to challenge the warrant in the state courts on the basis of lack of probable cause through California Penal Code section 1538.5.  Petitioner also utilized the opportunity to challenge the validity of the warrant in habeas petitions to the Superior Court for San Diego County, the Court of Appeal, and the California Supreme Court.  (Lodg. 8, p. 3; Lodg. 12, p. 1-2; Lodg. 13, p. 12).  Thus, because Petitioner has been afforded and utilized these opportunities to raise his Fourth Amendment claim, federal habeas review is not available.  *Stone,* 428 US at 494.

In claiming that the arrest warrant was invalid, it appears that Petitioner is also claiming that the arrest itself was illegal.  Even if Petitioner's arrest was deemed to be illegal, however, this would pose a defense to a subsequent prosecution.  *Crews,* 445 U.S. at 474.  Thus, federal habeas relief is not available.

Petitioner has failed to show that he was denied an opportunity to raise his Fourth Amendment claim in the state courts.  *Stone,* 428 U.S. at 494.  Even if he had,

Petitioner has not shown that his illegal arrest is sufficient grounds for federal habeas relief. *Crews,* 445 U.S. at 474. Therefore, it is recommended that relief on the basis of Ground Three be **DENIED**.

### D. Ground Four: Unconstitutionally Suggestive Lineup

Petitioner claims that the use of a "show up" lineup was unduly suggestive when an "active" lineup could have been used to reduce suggestive implications. (ECF No. 1, Ground 4, p. 1). Specifically, Petitioner claims that in the "show up" lineup Officer Carwell used a photograph of Petitioner from 2001 which did not accurately reflect Petitioner's appearance in 2004. *Id.* at 1-2. When the shooting occurred, Petitioner states that he had "facial and shoulder length hair," as shown in the 2004 photo. *Id.* Therefore, Petitioner concludes that the police used the 2001 photo as an improper attempt to favor the initial description of the suspect that eyewitnesses gave to police. *Id.* Petitioner concludes the impermissibly suggestive procedure and identification gave rise to an irreparable mistaken identification, leading to his conviction in violation of his due process rights of the Fifth and Fourteenth Amendments. *Id.* at 4.

Respondent contends that Rachel and William Liebert each positively identified Petitioner as the shooter based on facial features and, therefore, it would make no difference whether the 2001 or 2004 photographs were used. (ECF 7, p. 23-24). Additionally, Respondent points to Rachel's testimony that the shooter was wearing a baseball cap, which respondent claims would cover up the longer hairstyle depicted in Petitioner's later photograph. *Id.* at 24.

The Superior Court rejected Petitioner's claim finding the identification issue to be insignificant because both witnesses clearly identified Petitioner and that this was not a case of cross-racial identification. (Lodg. 8, p. 3). The court also found Petitioner's claim that the 2001 photo did not accurately depict Petitioner's appearance in 2004 to be unsupported, and the description discrepancies were minor.

*Id.* The Court of Appeal also rejected Petitioner's claim of an unconstitutionally suggestive photo lineup.  (Lodg. 12, p. 1-2).

A law enforcement's pre-trial identification procedure violates due process when the procedure "was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmins v. United States*, 390 U.S. 377, 384 (1986).  In determining whether the out-of-court identification procedure is so impermissibly suggestive as to taint later in-court identifications in denial of defendant's due process rights, the court must examine the totality of the circumstances. *United States v. Nash*, 946 F.2d 679, 681 (9th Cir. 1991); *Bagley*, 772 F.2d at 492.  Ultimately, it is the reliability of the identification that the court must take into account.  *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977).

Petitioner's claim that the 2001 photo was impermissibly suggestive in the pre-trial identification process ignores the basis on which the eyewitnesses to the shooting identified Petitioner.  The eyewitnesses did not identify Petitioner on the basis of hair length or the lack of facial hair.  At the preliminary hearing, Rachel Liebert testified that petitioner stood out in the photo lineup because "I remember his face."  (Lodg. 15, p. 59).  William Liebert testified that his basis for identifying Petitioner as the shooter was Petitioner's face.  *Id.* at 74.  More specifically, William stated that he remembered a "grin," and that it was the same grin that he had seen in the picture.  *Id.*

At trial, Rachel Liebert testified that it was specifically Petitioner's face that she remembered when she identified Petitioner in the photo lineup and in court, without reference to hair length or facial hair.  (Lodg. 15, Vol. 3, p. 105-106).  William also testified that it was "the grin on [Petitioner 's] face" that he recognized when identifying Petitioner in the photo lineup and in court.  *Id.* at 66-68.  Neither witness testified that they identified Petitioner as the shooter based on hair length; each testified that they were unable to see the shooter's hair or its length.  *Id.* at 78, 132.

In examining the totality of the circumstances, the discrepancies in the

photographs were minor and involved aspects of Petitioner's appearance that the eyewitnesses did not discuss.  Therefore, the use of the 2001 photo at the initial identification, depicting Petitioner with short hair and no facial hair, did not taint the subsequent, in-court identifications, and did not violate Petitioner's Due Process rights.  *Nash*, 946 F.2d at 681.

Petitioner has failed to show that the pre-trial identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification in violation of due process.  *Simmins,* 390 U.S. at 384.  The state court's decision rejecting this claim is not contrary to, nor an unreasonable application of clearly established federal law.  *Williams*, 529 U.S. at 413.  Therefore, it is recommended that relief on the basis of Ground Four be **DENIED**.

E. **Ground Five:  Denial of Discovery of Exculpatory and Impeachment Evidence**

Petitioner claims that the prosecution failed to disclose that the arrest warrant was based on perjured testimony, the admonishment and photo line-ups from March 16, 2004, and the 2004 updated parole photos.  (ECF No. 1, Ground 5, p. 1-4).

This issue is duplicative of Petitioner's *Brady* claims already discussed.  For the reasons set forth above, it is recommended that relief on the basis of Ground Five be **DENIED**.

F. **Ground Six:  Denial of Reciprocal Discovery Rights**

Petitioner claims that the prosecution denied the defense reciprocal discovery in a timely manner in violation of Petitioner's fair trial rights and due process.  (ECF No. 1, Ground 6, p. 1-2).  Specifically, Petitioner asserts that prosecution generally failed to disclose evidence related to identification of Petitioner, including acknowledgment of a perjured arrest warrant, the March 16, 2004 admonishment and photo lineup, updated parole photos, and the 2004 Albuquerque booking photo.  *Id*.  Respondent contends that there is no constitutional right to discovery, unless a claim falls under

1 *Brady.*  (ECF No. 7, p. 24-25).  Therefore, since this claim does not involve *Brady,*

2 there is no federal claim.  *Id.* at  25.

3      Petitioner did not raise this issue on direct appeal.  The claim was first raised

4 in a habeas petition to the San Diego County Superior Court, which rejected the claim.

5 (Lodg. 8, p. 3).  The court found the identification issue to be insignificant because

6 both witnesses clearly identified Petitioner and that this was not a case of cross-racial

7 identification.  *Id.*  The Court of Appeal also rejected Petitioner's claim of denial of

8 reciprocal discovery.  (Lodg. 12, p. 1-2).

9      The Due Process Clause "has little to say" in regards to what discovery a party

10 must be afforded.  *Wardius v. Oregon,* 412 U.S. 470, 474 (1973).  Federal law provides

11 that "there is no general constitutional right to discovery in a criminal case, and

12 *Brady* did not create one."  *Weatherford v. Bursey,* 429 U.S. 545, 559 (1977).  This

13 right was not created in *Brady* because the court's discussion was limited only to the

14 discovery of exculpatory evidence.  *See Gray v. Netherland,* 518 U.S. 152, 168 (1996)

15 (citing *Weatherford,* 429 U.S. at 559).

16      Petitioner's claim ignores that clearly established federal does not law provide

17 Petitioner with a constitutional right to general discovery.  *Weatherford,* 429 U.S. at

18 559.  The only constitutional right to discovery falls under a *Brady* claim, and

19 Petitioner is not alleging a violation of *Brady* in this claim, as he did in grounds two

20 and five, discussed *supra.  Id.*  As Petitioner is not alleging a violation of *Brady,* there

21 is no violation of a constitutional right.  *Id.*

22      Petitioner's claim that the prosecution denied reciprocal discovery does not give

23 rise to a federal question for which relief may be granted.  *See Id.*  Therefore, it is

24 recommended that relief on the basis of Ground Six be **DENIED**.

25   **G.   Ground Seven:  Ineffective Assistance of Trial and**

26        **Appellate Counsel**

27      Petitioner claims he received ineffective assistance of counsel at both the trial

28                                      - 20 -                    10cv-1707-DMS-(MDD)

court and appellate court level.  (ECF No. 1, Ground 7, p.1-3).  Respondent contends that the trial counsel's actions are not objectively unreasonable, and the state court's rejection of the claim is entitled to deference.  (ECF No. 7, p. 25).

Petitioner raised this claim in his habeas petition to the Court of Appeal. (Lodg. 11, p. 90).  The court summarily rejected the claim, finding that Petitioner has not met the burden of stating a prima facie case for relief citing to *People v. Duvall,* 9 Cal.4th 464, 474-475.  (Lodg.12, p. 1-2).  Petitioner also raised the issue to the California Supreme Court which denied the petition without comment. (Lodg. 14).

Ineffective assistance of counsel claims must apply the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).  *Williams*, 529 U.S. at 390; *Canales v. Roe*, 151 F.3d 1226, 1229 n.2 (9th Cir. 1998); *Baylor v. Estelle*, 94 F.3d 1321, 1323 (9th Cir. 1996).  To succeed on this claim a Petitioner must show that he has been prejudiced as a result of the ineffective assistance.  *Strickland*, 466 U.S. at 687.  This standard employs a two-part test that first determines whether counsel's actions were objectively unreasonable, and second, whether there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at  687-92; *Williams*, 529 U.S. at 390-91.  Review of counsel's performance is "highly deferential," and there is a strong presumption that counsel's conduct was within a "wide range" of reasonable professional conduct.  *Strickland*, 466 U.S. at 689-90; *United States v. Ferreira-Alameda*, 815 F.2d 1251, 1253 (9th Cir. 1987).  In petitioning for federal habeas relief, it is the petitioner's burden to show that the state court applied the *Strickland* standard in an objectively unreasonable manner.  *Woodford v. Viscotti,* 537 U.S. 19, 25 (2002).

### 1.    Additional Witnesses

Petitioner asserts that trial counsel's conduct in failing to call or investigate additional witnesses was objectively unreasonable.  Petitioner claims that counsel should have called alibi witnesses and  "description" witnesses. (ECF No. 1, Ground 7,

p. 1-2).  Additionally, Petitioner claims that the victim of the convenience store shooting, Eugene Griffin, and an unidentified gang expert should have been investigated to provide additional information.  *Id.* at 2-3.

Defense counsel has a duty to make reasonable investigations or to make a decision that renders particular investigations unnecessary.  *Bragg v. Galaza,* 242 F.3d 1082, 1088 (9th Cir. 2001).  However, this duty is not limitless and does not "require every conceivable witness be interviewed."  *Id.* (quoting *Hendricks v. Calderon*, 70 F.3d 1032, 1040 (9th Cir. 1995).  If Petitioner asserts a failure to interview or call a particular witness there must be evidence beyond Petitioner's self-serving affidavit that the witness exists.  *Dows v. Wood*, 211 F.3d 480, 486 (9th Cir. 2000).  Petitioner also must provide sufficient evidence to show that this witness would have been helpful to the defense.  *Id.*

Petitioner's claim that trial counsel was ineffective in failing to call an alibi witness does not identify a specific witness.  (ECF No. 1, Ground 7, p. 1).  Consequently, Petitioner cannot satisfy the requirement of showing that the witness exists and that the witness would be helpful to the defense.  *Dows*, 211 F.3d at 486.

There is some suggestion in the record that Petitioner believes that Tracy Reasonover, a member of the same gang as William Liebert, could have supplied an alibi for Petitioner.  Assuming that this is the alibi witness that Petitioner claims should have been investigated by his counsel, Petitioner's claim is unavailing.  Prior to sentencing, trial counsel moved for a new trial based on new evidence in the form of testimony from Tracy Reasonover.  (Lodg. 1, p. 208-209).  Trial counsel claimed that William Liebert told Reasonover that Petitioner was not the shooter.  *Id.*  The court denied this motion.  (Lodg. 15, Vol. 9, p. 567).  In asserting this claim here, Petitioner has failed to produce an affidavit, or other evidence, that Reasonover would have testified as proffered.  Consequently, Petitioner cannot show that calling Reasonover would have been helpful to the defense. *Dows*, 211 F.3d at 486.

Petitioner claims that trial counsel should have interviewed and called Terri Preston, whom Petitioner asserts would have provided a description of the shooter contrary to the testimony of the victims. (ECF No. 1, Ground 7, p. 1-2). Petitioner bases this claim on information in "discovery transcripts." *Id.* While it is unclear which transcript Petitioner is referring to, it appears the reference is to the Oceanside Police Department Officer's Report Narrative from March 16, 2004. (Lodg. 8, p. 20). The Report Narrative relays Preston's description of a subject appearing to be a "black male approximately 17 to 25 years old, 6'00" tall, skinny, wearing a gray beanie on his head, and a large blue jacket." *Id.* Preston also indicates that "she is not sure she could identify the suspect," and did not see the shots fired. *Id.* Petitioner, however, has not provided any evidence that Preston would have actually testified to the information in the police report narrative. Petitioner makes only the self-serving conclusion that Preston would have been a more reliable witness because she was not under stress. (Lodg. 8, p. 20).

Assuming, *arguendo*, that trial counsel's failure to investigate Preston's statements was an objectively unreasonable error, Petitioner has failed to show that but for counsel's error, there is a reasonable probability that the results of the proceeding would have been any different. *Williams*, 529 U.S. at 390-91. The basis of Petitioner's claim is the purported discrepancy between Preston's description of the shooter's headwear and that of the Lieberts. Petitioner's argument ignores the evidence that the victims identified Petitioner as the shooter upon recognizing his face in a photograph without reference to headwear. (Lodg. 15, p. 59, 74). Further, nothing in Preston's description, outside of what the subject wore on his head, serves to contradict the identification of the shooter by the victims. Ultimately, the type and color of the shooter's hat has little to no bearing on the identification of the shooter. Even if Preston had testified to the information contained in the report narrative, this testimony does not give rise to a reasonable probability that the outcome of the

proceeding would have been different. *Williams*, 529 U.S. at 390-91.

Petitioner also states that Eugene Griffin, the victim of the convenience store shooting, could provide more information. (ECF No. 1, Ground 7, p. 2). Petitioner, however, did not include any description of the information which could have been provided by Griffen. *Id.* Absent any information that this witness would have been helpful to the defense, or even testify, it was not objectively unreasonable for trial counsel to fail to investigate or call Eugene Griffin. *Dows*, 211 F.3d at 486.

Petitioner asserts that a gang expert should have been located and called to refute testimony by the prosecution's gang expert, Officer Marchand. (ECF No. 1, Ground 7, p. 2). Petitioner neither suggests a specific witness nor provides specifics regarding the testimony that could have been solicited from the witness. *Id.* Because Petitioner has made an insufficient showing, it was not objectively unreasonable for trial counsel to fail to call such a witness. *Dows*, 211 F.3d at 486.

### 2. Jury Instructions

Petitioner asserts that the court's supplemental jury instructions, including factors that the jury may use to determine the existence of a "kill zone," contributed to the ineffective assistance of counsel. (ECF No. 1, Ground 7, p. 1; ). Petitioner alleges that because the supplemental instructions were given mid-deliberation, he did not have an adequate opportunity to challenge them to the jury, and, in any event, did not challenge them. *Id.*; (Ground 1, p. 1).

Black raised this issue on direct appeal. The Court of Appeals found that:

> Both the prosecution and the defense were aware that the jury would be instructed with CALJIC No. 600, and both knew that the jury would be considering the question whether Black intended to kill Rachel as a secondary target in the "kill zone." In fact, the parties were aware that there was little evidence to support a finding that Black intended to kill Rachel as a primary target; the prosecutor did not even argue that Rachel was one of Black's primary targets. Black thus knew that the jury would have to decide whether or not he intended to kill everyone in the "kill zone" in order to render a verdict on the attempted murder charge as to Rachel. The defense had every opportunity to argue that the facts did not support a finding that Black had the requisite intent to be found guilty of the attempted murder of Rachel. Instead, Black chose to

defend against the charges on the theory that the victims had misidentified him and that he was not the person who had committed the charged crimes.

(Lodg. 5, p. 18).

Review of counsel's performance is "highly deferential," and there is a strong presumption that counsel's conduct was within a "wide range" of reasonable professional conduct. *Strickland*, 466 U.S. at 689-90. Once counsel has elected to pursue one defense theory, the need to develop another theory, may be diminished or eliminated. *Franklin v. Johnson*, 290 F.3d 1223, 1235-36 (9th Cir. 2002).

Defense counsel had opportunity to argue against the establishment of a "kill zone," but made a tactical decision to pursue a different defense theory. Making the decision to present the theory of misidentification was within the range of reasonable professional conduct, and was not objectively unreasonable. *Strickland*, 466 U.S. at 689-90. Additionally, Petitioner's trial counsel was not required to pursue every possible defense strategy once a decision had been made to present a single, and most likely the strongest possible strategy. *Franklin*, 290 F.3d at 1235-36.

### 3. Arrest Warrant

Petitioner contends that trial counsel was ineffective in failing to file a motion to terminate the warrant for Petitioner's arrest on the basis that the date of identification by Rachel Liebert was incorrect. (ECF No. 1, Ground 7, p. 2). Petitioner raised this issue in his habeas petition to the Superior Court. (Lodg. 8, p. 3). The court rejected the claim finding the date of identification being listed as March 16, 2004 instead of March 18, 2004, was "inconsequential." (Lodg. 8, p. 3).

When trial counsel's failure to properly litigate a Fourth Amendment claim is the principal allegation of ineffectiveness, the Petitioner must also prove that the Fourth Amendment claim is meritorious, and further that there is a reasonable probability that the outcome of the proceedings would have been different. *Kimmelman v. Morrison,* 477 U.S. 365, 375 (1986). Failure to raise a meritless

argument does not constitute ineffective assistance. *Boag v. Raines,* 769 F.2d 1341, 1344 (1985). Petitioner "is not himself a suppressible 'fruit,' and the illegality of his detention cannot deprive the government of the opportunity to prove his guilt through evidence wholly untainted by the police misconduct." *Crews,* 445 U.S. at 474.

Here, even if Petitioner could prove that the invalid arrest warrant claim had merit, Petitioner remains unable to show that there is a reasonable probability that the outcome of the proceedings would have been different. *Kimmelman,* 477 U.S. at 375. Rachel and William both positively identified Petitioner in a photo lineup and in court. (Lodg. 15, p. 59, 74). Neither witnesses' testimony was tainted by the mistaken date regarding Rachel's photo lineup identification in the affidavit in support of the warrant. Even if trial counsel had moved and prevailed in finding the arrest warrant invalid, Petitioner's presence at trial could not be suppressed. *Crews,* 445 U.S. at 474. Petitioner would be present for the courtroom identifications, and the government could still prove Petitioner's guilt through Rachel and William's testimony. *Id.* Therefore, even if the challenge to the arrest warrant was meritorious, there is no reasonable probability that the outcome of the proceedings would have been different. *Kimmelman,* 477 U.S. at 375.

### 4.   Identification Evidence

Petitioner contends that trial counsel was ineffective in challenging his identification by failing to request the March 16, 2004 admonishment and photo lineup, as well as updated parole photos. (ECF No. 1, Ground 7, p. 3). However, as discussed *supra* in part III(B), there is no reasonable probability that this evidence would have changed the outcome of the proceedings. Therefore, Petitioner is unable to show that he has been prejudiced as a result of the alleged ineffective assistance. *Strickland*, 466 U.S. at 687.

### 5.   Appellate Counsel

Petitioner contends that his appointed appellate counsel failed to investigate

and file "evident appeal grounds."  (ECF No. 1, Ground 7, p. 3).  Petitioner has not

identified these grounds.  Petitioner raised this issue in his petition for habeas relief

to the San Diego County Superior Court.  The court rejected the petition stating

> "[i]t is not required that an attorney argue every conceivable issue on
> appeal, especially when some may be without merit.  Indeed, it is his
> professional duty to choose among potential issues, according to his
> judgment as to their merit and his tactical approach."

(Lodg. 18, p. 3) (citing *Jones v. Barnes*, 463 U.S. 745, 749 (1983)).

Petitioner has not met the burden to show that the state court applied the

*Strickland* standard in an objectively unreasonable manner by failing to identify

conduct of his trial or appellate counsel that was objectively unreasonable.  *Williams*,

529 U.S. at 390.  The decision of the state court rejecting the ineffective assistance of

counsel claim is not contrary to, nor an unreasonable application of clearly established

federal law.  *Id.* at 413.  Therefore, it is recommended that relief on the basis of

Ground Seven be **DENIED**.

### H.   Ground Eight:  Insufficient Evidence to Support the Conviction

Petitioner claims that the totality of evidence, including inconsistent

identification evidence and a lack of motive, is insufficient to support his conviction.

(ECF No. 1, Ground 8, p. 1-5).  The claim appears to be that there was insufficient

evidence establishing the identification of Petitioner as the shooter.  *Id.*  Respondent

contends that Petitioner's claim is based on a purely personal belief that witnesses did

not provide satisfactory identification evidence.  (ECF No. 7, p. 32).  Further, as the

state courts previously rejected Petitioner's claim, the decisions of the California

Courts are entitled to deference.  *Id.* at 33.

Petitioner did not raise this issue on direct appeal.  It is not clear whether the

issue was raised in the San Diego County Superior Court as the court's denial of the

petition did not include reference to it.  (Lodg. 8).  The Court of Appeal denied habeas

relief finding Petitioner had not met his burden of stating a prima facie case.  (Lodg.

12, p. 1-2). Petitioner raised this claim in a habeas petition to the California Supreme Court which denied it without comment. (Lodg. 14).

Due process is violated "if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt" of every element of the offense. *Jackson v. Virginia*, 443 U.S. 307, 324 (1979); *In re Winship*, 397 U.S. 358, 364 (1970) (holding that the Due Process Clause requires proof beyond a reasonable doubt of every fact necessary to constitute the crime being charged). Federal courts must respect the province of the trier of fact to determine the credibility of witnesses, resolve conflicts in the evidence, and draw reasonable inferences from proven fact. *Jackson*, 443 U.S. at 319; *United States v. Hubbard*, 96 F.3d 1223, 126 (9th Cir. 1996). When the defendant has been found guilty by the trier of fact, the court must consider evidence in the light most favorable to the prosecution. *Jackson*, 443 U.S. at 319. The prosecution need not rule out every possible hypothesis. *Id.* at 326. Reasonable inferences drawn from circumstantial evidence may properly form the basis of a conviction. *Schad v. Ryan*, No. 07-99005, 2011 WL 5433763, at *8 (9th Cir. Nov. 10, 2011) (citing *United Stated v. Jackson,* 72 F.3d 1370, 1381 (9th Cir. 1995)).

A Petitioner faces a heavy burden when challenging the sufficiency of the evidence used to obtain a state conviction on the grounds of federal due process. *Juan v. Allen*, 408 F.3d 1262, 1274 (9th Cir. 2005). In reviewing an insufficient evidence claim, the federal court must ask whether the state courts reasonably applied the *Jackson* and *Winship* standard. *Juan*, 408 F.3d at 1274.

Petitioner asks this court to question the credibility of the two victims who were eyewitnesses to the shooting. *Id.* However, it is not for the court to re-evaluate the credibility of the identifications as found by the trier of fact. *Jackson*, 443 U.S. at 319. Rather, this court must determine if the state court reasonably applied the *Jackson* standard in determining that a rational trier of

- 28 -

1  fact could have found proof beyond a reasonable doubt. *Juan*, 408 F.3d at 1274.

2  Petitioner was identified by two eyewitnesses.  Both Rachel and William

3  Liebert identified Petitioner in a photo lineup, at the preliminary hearing, and

4  then later at trial.  Based upon this evidence, a rational trier of fact could find

5  proof of guilt beyond a reasonable doubt. *Jackson*, 443 U.S. at 324.

6         Petitioner also claims that inconsistencies in testimony, including the shooter's

7  skin tone and type and color of headwear, show that Petitioner was not sufficiently

8  identified.  (ECF No. 1, Ground 8, p. 1-2).  However, just as it is not the province of

9  this court to determine the credibility of the witnesses, the court also must defer to the

10  trier of fact to resolve any evidentiary inconsistencies. *Jackson*, 443 U.S. at 319.  As

11  the jury returned a verdict of guilty, this court must assume that the inconsistencies

12  were resolved in favor of the prosecution. *Id.*  Further, these minor inconsistencies do

13  not rise to a level that no rational trier of fact could find proof of guilt beyond a

14  reasonable doubt. *Id.* at 324.

15         Petitioner also claims that the evidence is insufficient to support the conviction

16  because there was no motive for Petitioner to shoot at Rachel and William Liebert.

17  (ECF No. 1, Ground 8, p. 5).  In recounting testimony of gang expert Officer

18  Marchand, Petitioner weaves a hypothetical situation in which a member of the

19  Neighborhood Crip sect, rather than Petitioner's Deep Valley Crip sect, would have a

20  greater motive to shoot at William, a member of the Deep Valley Bloods, in retaliation.

21  *Id.*  The prosecution , however, is only required to prove beyond a reasonable doubt

22  that Petitioner was the shooter, not disprove every other possible hypothesis.

23  *Jackson*, 443 U.S. at 319.

24         Further, circumstantial evidence was presented to the jury establishing

25  Petitioner's motive. The jury heard testimony from Officer Machand that the Deep

26  Valley Crips and the Deep Valley Bloods were engaged in a "gang war" with each

27  other. (Lodg. 15, Vol. 4, p. 244-45).  This war played out in a "back and forth"  effect,

28

in which each group would retaliate in acts of violence against the other.  *Id.* at 245. Further, the jury heard testimony from Petitioner's fellow jail inmate, Marvin Guiher, that Petitioner had described Rachel as a "casualty of war."  (Lodg. 15, Vol. 3, p. 199). Therefore, the jury had the ability to draw a reasonable inference that Petitioner did have a motive to commit the charged crimes based on the available circumstantial evidence.  *Ryan*, 2011 WL 5433763, at *8.

Petitioner has failed to show that no rational trier of fact could have found proof of guilt beyond a reasonable doubt.  *Jackson*, 443 U.S. at 324.  Thus, the state has not unreasonably applied the *Jackson* standard, and the decision of the state court rejecting this claim is entitled to deference.  *Juan*, 408 F.3d at 1274.  The state court's rejection of the claim is not contrary to, nor an unreasonable application of clearly established federal law.  *Williams*, 529 U.S. at 413.  Therefore, it is recommended that relief on the basis of Ground Eight be **DENIED**.

I.    **Ground 9:  Denial of Right to Jury Trial to Find Facts When Imposing Consecutive Sentences**

Petitioner claims that his right to trial by jury was violated when the court imposed consecutive sentences without the jury finding factors increasing a sentence beyond a reasonable doubt.  (ECF No. 1, Ground 9, p. 1).  Respondent contends that the claim is foreclosed by *Oregon v. Ice*, 555 U.S. 160 (2009).

Petitioner raised this issue on direct appeal.  (Lodg. 5, p. 19).  The Court of Appeal stated that "[Petitioner] recognizes that the [California] Supreme Court has rejected this claim, but raises it in order to preserve the issue for 'federal review'."  *Id.* The California Supreme Court denied review, without prejudice to any relief that Petitioner may be entitled to after the United States Supreme Court decision of *Oregon v. Ice*.  (Lodg. 7).

Habeas review is not available to re-visit state court determinations on issues of interpretation or application of state law.  *Estelle,* 502 U.S. at 72 (1991).  Where a

defendant is convicted of multiple offenses involving discrete sentencing prescriptions, it is not necessary that a jury determine the facts required to impose consecutive, instead of concurrent, sentences. *Ice*, 555 U.S. at 163-64. It is not a violation of the Sixth Amendment for a state to allow a judge to find certain facts in the imposition of consecutive sentences. *See id.*

Here, the trial court judge heard arguments and found that facts supported the imposition of consecutive sentences. (Lodg. 15, Vol. 9, p. 567-92). The trial court imposed 25 years to life plus 44 years and eight months for Petitioner's several convictions. (Lodg. 1, p. 245). In *Oregon v. Ice*, the Supreme Court explicitly allowed for judges to act as fact finders when imposing consecutive sentences, and thus no error occurred in this case. *Ice*, 555 U.S. at 163-64. Because of this explicit approval, Petitioner's Sixth Amendment claim of a violation of his right to a jury trial in finding facts when imposing consecutive sentences must fail.

The decision of the state to impose consecutive sentences is not contrary to, nor and unreasonable application of clearly established federal law. *Williams*, 529 U.S. at 413. Therefore, it is recommended that relief on the basis of Ground Nine be **DENIED**.

## V. CONCLUSION AND RECOMMENDATION

For all the foregoing reasons, **IT IS HEREBY RECOMMENDED** this Petition for Writ of Habeas corpus by **DENIED** in its entirety on the grounds that Petitioner is not in custody in violation of any federal right.

**IT IS FURTHER RECOMMENDED** the District Judge assigned to the case issue an Order: (1) approving and adopting this Report and Recommendation; and (2) directing Judgment be entered denying the Petition.

**IT IS HEREBY ORDERED** no later than **September 12, 2012** any party to this action may file written objections with the court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** any Reply to the Objections shall be filed with the court and a copy served to all parties no later than **September 26, 2012**.  The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the court's Order.  *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1156 (9th Cir. 1991).

**IT IS SO ORDERED.**

**DATED:  August 21, 2012**

**Hon. Mitchell D. Dembin**
**U.S. Magistrate Judge**